By the Court.
Bosworth, J.
—It is the duty of a master whose vessel becomes so disabled during her voyage that she cannot complete it, to forward the cargo by some other vessel when that can be done. (Abbott on Shipping, 4th Am. Ed., 241, 244.)
. The increased freight, if any, in such cases, is a charge upon the goods. (Ogden v. The General Mutual Insurance Company, 2 Duer R., 216, and cases there cited.)
The Judge,' at the trial, charged in substance, that if, by a resort to proper measures, to rid the hides of worms, the master could have put them in a proper condition for reshipment, and had it in his power to clean the hides, and if they were not so perishable or so much damaged as to render their total destruction before reaching New York, according to the due exercise of an honest judgment, in the highest degree probable, and if he could have forwarded them in another vessel, the plaintiffs were entitled to recover; notwithstanding the advice given to him at Carthagena by those whom he consultéd. (The plaintiffs had requested the court to so charge the jury.)
The plaintiffs are entitled to a fair application of this rule, in disposing of the case on this appeal. If the evidence required the jury to find such to be the facts, there should be a new trial. If it is thought that, any other rule of duty and liability should have been stated as a guide to the jury, it should be stated at the trial, that the plaintiffs may have an opportunity to except to it, if they deem it erroneous;
The hides in question, including another lot equally large, were cleaned at an expense of $15. There is no pretence, that the cost of cleaning, and of reloading, combined with any increased freight that would have been charged, made it as much the interest of the shippers or consignees' that they should be sold, as that they should be forwarded by another vessel.
The captain could have procured the hides to be thoroughly cleaned, as well as those who bought them. If it would have cost him even three times as much, as it did them, it was nevertheless his duty to have had it done. They could have been shipped by the Arabia, for they were so shipped. They could *366 have been carried to New York in a condition to bring two-thirds the market price of sound hides, for that was done. They were sold, for a third of their market value in New York. There is no ground, upon the evidence, for suggesting that the cleaning of them thoroughly, transhipping them, and any extra freight that might have been charged would have amounted to one-sixth of the excess of the price they brought in New York, over that for which they were sold, or that any one supposed they would amount to that.
By the survey itself, the necessity and justification of a sale at Oarthagena, are based in part, and I think we may say, chiefly, upon the assumption that if not sold they must be detained at Oarthagena until the Pedee was repaired, and ready to resume her voyage, and then must be taken to New York, by the way of Ouba. Sanchez testifies, that his opinion in favor of a sale was founded in part upon the fact “ that the vessel was still bound to a port in Cuba, and that before the hides could arrive in New York, via that port, they would be entirely destroyed."
The only excuse, attempted by the captain, for not forwarding them by another vessel was “ the expense of cleaning them," “being short of funds to do it with." He says, “I tried to raise money for the purpose of cleaning the hides, and in consequence of not raising the money I had the survey.” The expense would have been $15, unless it would have cost him more than it did Horner & Foster. If it would have cost him three times as much, it would seem he might have raised funds for the purpose. He procured money for the repairs of the vessel on letters of credit from his owners, and was not obliged to sell any part of the cargo for that purpose. Those repairs amounted to over $3,000, besides the proceeds of the property he sold.
The conclusions cannot be avoided, that the hides could have been cleaned at a small expense, so that they could have been safely forwarded by another vessel, and that there was no difficulty in so forwarding them, and that it was clearly for the interest of the shippers that this should be done. The evidence all tends to support these conclusions, and there is no evidence that the master supposed or had any reason to suppose the contrary to be true. *367 We should not have the slightest doubt of the accuracy of these views had we not been assured on the argument, by the defendants’ counsel, uncontradicted by the counsel for the plaintiffs, that, on precisely the same evidence as is now before us, the learned district Judge for this district has decided that “the master was justified on the facts in proof in ordering a sale of the hides in question.” We have been furnished with a copy of his opinion, being in the case of Ferdinand Maas v. The Schooner Pedee.
That opinion is preceded by a statement of the facts which the learned Judge held established by the evidence. Neither in that statement nor in the opinion is any allusion made to the fact that the necessity of a sale was advised on the idea that the hides must go to New York via Cuba, nor is any notice taken of the fact that the captain knew he could ship them direct to New York by another vessel, and assigned no excuse for not doing it, except the expense of cleaning the hides, and the difficulty of raising money for that purpose. How much the captain supposed the expense would be, he no where states. We cannot but think there was some feature in the history of the case of Maas v. The Schooner Pedee which will distinguish it from the case before us; or that it was so presented as to create an impression that no pretence was made that the hides could have been prepared for reshipment, at a trifling expense, and forwarded direct to New York, in such condition and under such circumstances as to make it the clear duty of the master to have pursued that course.
The duty of the master is imperative to ship and forward the cargo in another vessel, when one can be had in the same port, and there are no great difficulties in the way of a reshipment of the cargo, and when that course is clearly required by the interests of its owners. Under such circumstances his duty is plain, when the only other alternatives are either a total loss of a part of the cargo, or an unnecessary sale of it at one-third of its value, damaged as it was, at the port of destination. (3 Kent’s Com., 213; Saltus v. Ocean Ins. Co., 12 J. R., 107; Treadwell v. Union Ins. Co., 6 Cow. R., 270; Abbott on Shipping, 4th Am. Ed., 243; The Henry, 1 Blatch. & How., 465.
Every case of this kind must depend upon its own circum *368 stances. The acts of a master will be upheld by the law, if upon all the facts before him, they be such as it may be reasonably supposed a prudent owner, personally present, would have directed or approved. (Abbott on Shipping, 4th ed., 242, 243.) It cannot be supposed that an owner of any prudence, would have directed or approved a sale at $344.26, when the goods could have been fitted and transhipped directly to their port of destination, at an expense short of $100, with a reasonable certainty of commanding at that port, according to the market value of such articles in a like damaged condition, from three to four times the price that could be obtained by a sale at the port of necessity. Under such circumstances, transhipment for the place of destination, is the first object, because that is in furtherance of the original purpose, and the interests of the shippers imperatively require it.
We are therefore quite clear that the verdict is not only against evidence, but on the point we are now considering, should have been for the plaintiffs.
It is insisted, and the Judge at the trial was requested to charge the jury, that the hides sold at Oarthagena, were not chargeable in general average for any repairs or expenses at that place; or incurred to reach it.
The expenses of putting into that port, having been made necessary and incurred for the safety of the ship and cargo, the hides must contribute to pay them.
The wages and provisions of the crew from the time of putting away for the port of distress to refit, and every other expense necessarily incurred during the detention for the benefit of .all concerned, are to be contributed for as general average. (2 Arnould, 914, note 1.)
But expenses incurred for the benefit of the ship alone, or for the whole or a part of the cargo only, must be borne by the thing for whose benefit it was incurred.
After it was determined to sell the hides on the ground that they could be carried no further, and after they had been sold and converted into money, it is difficult to perceive, in 'what sense, any subsequent expenses, of reloading the residue of the cargo, or for wages or provisions of the crew during their detention subsequent to such sale, can be deemed to have been made *369 for the benefit of the hides or of their proceeds. They were not incurred with a view to benefit or carry forward either of them. (Vandenheuvel v. United States Ins. Co., 1 J. R., 406; Peters & Co. v. Warren Ins. Co., 1 Story R., 468, 469.)
The point argued was that there were no expenses for which the hides could be made to contribute in general average. As to this we think the plaintiffs are wrong. What particular expenses they should contribute in general average to pay, if chargeable with any, is a question not before us. That the Judge was not requested to decide, but it was to be thereafter ascertained, if the verdict should be for the plaintiffs, on a proper adjustment.
No point having been made that the amount justly payable had not been tendered, provided the hides were liable to contribute in general average, and provided also that the hides were justifiably sold as a matter of necessity, and it having been stipulated that the defendants were to have the same benefit from the tender, as if it had been plead and the money paid into Court, it was not error to instruct the jury that if they found the sale of the hides to be necessary they should render a verdict for the defendants. ([Logue v. Gillick, 1 E. D. Smith R., 398.)
The judgment must be reversed and a new trial granted.